Caeuthees, <F.,
delivered tbe opinion of tbe court.
This is an appeal by tbe State from a judgment of bis honor tbe judge of tbe criminal court at Nashville, quashing an indictment against the defendants for giving spirituous liquor to a slave, upon the ground of an insufficient description of tbe offence.
Tbe charge is, that tbe defendants, on tbe 15th of April, 1854, “unlawfully, a certain gill of spirituous liquors to a certain slave, name unknown, and tbe name of the owner of said slave unknown, then and there did give, witbout tbe consent in writing of tbe owner, or person having the lawful control of said slave, the said Charles W. Harris and Peter Harris, being licensed retailors of spirituous liquors, contrary,” &c.
This indictment is under tbe act of 1852, ch. 174, §10. The description of-tbe offence is, “that it shall not be lawful for any grocer, or retailor of spirituous or vinous liquors, to give to any slave, or slaves, vinous or spirituous liquors, without the consent of the owner or owners, or other person having the lawful control of such slave or slaves; such consent shall be in writing, and for each application.” The objection taken to this indictment is, that the name of the slave, nor • that of his owner, is given; and for that reason, it should be quashed, as it was, for uncertainty, or insufficient description of the offence.
We are referred to the case of the Commonwealth of Kentucky vs. Cook, 13 B. Monroe, 149, in support of this position, and also, a case in 3 Hill’s S. C. Rep., page 61, on the same question. In the Kentucky case, it does not appear whether the question was properly *226 raised by the presentment, averring that the name of the slave or owner was “unknown,” to the jurors. The opinion states that “the presentment does not allege to whom the slaves belonged, nor furnish any description by name or otherwise, by which they could have been identified.”
In the South Carolina case the charge is,. giving spirituous liquors “to a slave of a person, and name unknown.”
This is the same in substance, with the case before us, and cannot, in principle, be distinguished from it.
The decisions of our sister States, however, though highly to be respected as evidence of the law, are not by any means, authority binding upon us. We recognize the general principles laid down in those cases, as to the necessity of a description of offences, sufficiently certain to enable the accused to know the charge which he is called upon . to answer, and to protect himself against future indictments for the same acts.
But in the application of those rules, we do not concur in the opinions referred to. We think such strictness as that required in those cases, would result in the escape of nine-tenths of the offenders, under this very important and salutary act of our legislature. In order to bring this low and degraded class of traders to justice, for corrupting the slaves of their neighbors, if it be required that none but those who are acquainted with the slave, so as to give his name, or some accurate description of him, can bring the petty offender to justice, it is easy' to see, that he can go on with his work of destruction with impunity, unless the testimony of slaves were made legal in such cases. The prae- *227 tice of selling spirits to slaves is generally done under tbe most guarded secrecy; most generally at tbe back door, under cover of night, or, in violation of tbe Sabbath. Tbe pretended gifts ®of liquor to them, by tipplers, is generally intended as a bait, and not unfre-quently, as a reward for some mean pilfering for tbe benefit of tbe kind hearted dram seller. This rule then, requiring that the name of the skulking slave shall be known, before his corrupter can be brought to justice, would almost make a dead letter of the statutory law, which was' so strongly called for by the best interest of society for the promotion of the health and morals of their slaves. If the slave is unknown, of course the name of his owner cannot be given. The rule is, that the indictment must either give the name, or allege that it is unknown. This statute only applies to regular retailors, and of course these remarks relate to no others, and only to such of them as violate this law. The number of cases which we have had before us at the present term, shows that the acts against selling and giving spirits to slaves, are shamefully disregarded by those privileged dram sellers.
But on the question under consideration, we are saved from the responsibility of making any new rule, for the purpose of giving force and vigor to the statute under consideration, and saving it from that distinction to which the technicality insisted upon and applied by the courts of Kentucky and South Carolina would consign it.
Our predecessors, in the case of The State vs. Carter, 7 Humph., 158, very properly considering, that a tippler could demand no greater certainty in an indict *228 ment against him for unlawfully selling spirits, than was required by the well settled law, in the cases of murder, larceny, and other high offences, where they were punished by death, in case of conviction, decided that an indictment against him was good, without naming the person to whom he sold. It is attempted in the argument, but we think unsuccessfully, to distinguish the case of selling or giving to a slave, from that of selling to a white man. It is argued, that it would be very difficult, perhaps impossible, for the tippler to establish that ground of defence given to him in the statute, to show a permit in writing from the master, unless the name of the slave and master be given.
If he engages in such a work as this, it is not requiring too much of him, to prove the writing, under which he acted. The selling or giving to a slave constitutes the charge; that is the entire and perfect of-fence. It is the business of the defendant to prepare his defence. The State should not be required to help him, nor the courts to establish a principle to facilitate his escape, • more stringent and technical, than that which governs cases affecting the life or liberty of a citizen.
To be sure, the proof will have to make out the case charged; the offence created by the statute, that is, that the defendants were retailors of spirits, and that they gave liquor to a slave, no matter who may have been his owner, that is no ingredient in the offence.
Upon this being done to the satisfaction of a jury, a conviction must follow, unless the defence of a written permission, as prescribed by the statute, can be made out.
*229 The judgment will be reversed and tbe case remanded for trial.